Union Plumbing & Heating Inc. v. Commissioner.
Union Plumbing & Heating, Inc. v. Commissioner
Docket No. 88268.
United States Tax Court
T.C. Memo 1962-50; 1962 Tax Ct. Memo LEXIS 259; 21 T.C.M. (CCH) 281; T.C.M. (RIA) 62050; March 13, 1962
*259 Held, that during the taxable years 1955, 1956, and 1957, T & G Plumbing & Heating Supplies, a partnership organized in 1953 which filed partnership information returns in each of the taxable years, was a separate entity from petitioner, Union Plumbing & Heating Inc., a corporation, although the two individuals who owned all the stock of the corporation were the same as the two members of the partnership. There were legitimate business reasons for the organization of the partnership and its operation during the taxable years. Therefore, the Commissioner erred in including the net income of the partnership in the income of petitioner. Irving C. Evers, Esq., 8 E. Palisade Ave., Englewood, N.J., for the petitioner. Arthur Pelikow, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in income tax against petitioner corporation, Union Plumbing & Heating Inc., as follows: Year
Deficiency
1955
$3,954.00
1956
4,009.38
1957
4,317.64 In each of the years the Commissioner made adjustments for "(a) Entertainment and travel" and "(b) Insurance expense." These adjustments were more or less minor in amount and petitioner does not contest them. In each of the years the Commissioner made an adjustment entitled "(c) Other income" to the taxable income reported by petitioner on the returns which had been filed. That adjustment is explained in the deficiency notice as follows: (c) It has been determined that net income distributed as profit of the partnership, T & G Plumbing & Heating Supplies, constitutes additional taxable income to the taxpayer corporation in the amount of $12,275.07 for the year 1955, $12,098.71 for the year 1956 and $13,291.22 for the year 1957. Petitioner by appropriate assignments *261 of error contests the correctness of the foregoing adjustment (c) which the Commissioner made for each of the taxable years. Findings of Fact A stipulation of facts to which several exhibits were attached was filed and is incorporated herein by this reference. So much of the stipulation will be stated as seems necessary to an understanding of the issue to be decided. Petitioner is a corporation organized in March 1950 under the laws of the State of New Jersey. It filed its income tax returns for the taxable years ended December 31, 1955, December 31, 1956, and December 31, 1957 with the director of internal revenue at Newark, New Jersey. The capital stock of petitioner was owned equally by Theodore Notarangelo and Gabriel DiLorenzo during each of the taxable years involved. From the time of its inception and during each of the taxable years involved petitioner was a plumbing and heating contractor. On January 12, 1953, Theodore and Gabriel formed a partnership under the firm name of T & G Plumbing & Heating Supplies, hereinafter sometimes referred to as T & G. Partnership returns of income were filed by the partnership for the taxable years 1955, 1956 and 1957. Materials *262 and supplies used by petitioner in its business were purchased from the partnership on a cost plus 10 percent basis. The sales by the partnership were as follows: Sales by Partnership
1955
1956
1957
To Petitioner
$143,381.00
$110,796.00
$87,509.00
To Outsiders
None
None
2,776.00
Total
$143,381.00
$110,796.00
$90,285.00
During the years 1955, 1956, and 1957 salaries were paid to Theodore and Gabriel as employees of petitioner; these salaries are not in issue. In May 1954, petitioner purchased improved real estate for $25,000 from an unrelated seller. Of the total consideration, $20,000 was advanced by Theodore and Gabriel who, as security for their loan, received a mortgage on the real estate from petitioner. Petitioner was indebted to Theodore and Gabriel for the years 1955, 1956, and 1957 on account of the mortgage and loan. Petitioner has paid no dividends to its stockholders since its organization in 1950. There were several factors which brought about the formation of the partnership of T & G in 1953. Among these plans and purposes were: the desire to sell as a wholesaler, the desire to make things easier for the principals, and eventually *263 to get out of the installation of the plumbing and heating business and engage wholly in the selling of heating and plumbing supplies. The merchandise which was purchased by the partnership was paid for by it and the individual members of the partnership assumed full responsibility for all obligations. Separate books were maintained by the two entities. The partnership agreement entered into in 1953 reads as follows: 1. The said parties have agreed to become partners in business and by these presents do agree to become and be partners in business, under and by the firm style and partnership name of "T & G Plumbing & Heating Supplies," in the business of buying and selling plumbing supplies and allied products, in the said Borough of Bergenfield. 2. The said partnership shall commence on this day of January, 1953, and shall continue for an unlimited period of time. 3. The partnership shall be known by the firm or style name of "T & G Plumbing & Heating Supplies." 4. For these purposes, the said THEODORE NOTARANGELO and GABRIEL DI LORENZO have each of them contributed to the said partnership of T & G Plumbing & Heating Supplies, the sum of $7,000.00, as partnership capital. *264 5. The said partnership capital, the aforesaid property and cash, shall be used and employed in common between the said parties, for the support and management of the said partnership business, to their mutual benefit and advantage. 6. It is hereby stipulated and agreed that, at all times during the continuance of the said partnership, the said parties and each of them shall give their and his attention and shall exercise their and his best endeavors and shall, to the utmost of their skill and power, exert themselves for their joint interest, profit, benefit, and advantage and shall employ, buy, and sell their merchandise and joint stock and the increase thereof in the business aforesaid. 7. It is hereby stipulated and agreed that the said parties shall and will, at all times during the continuance of the said partnership, bear, pay, and discharge equally between them all the rents and other expenses which may be required for the support and management of the said partnership business. 8. It is hereby stipulated and agreed that all the gains, profits, and increase which shall come, grow, or arise from, or by means of, their said partnership business shall be divided equally *265 between the said parties, share and share alike, and that all losses which may occur to and in their said partnership business by poor commodities, bad debts, or otherwise shall be borne and paid by and between the said parties in the same proportions. 9. It is hereby stipulated and agreed that, at all times during the continuance of the said partnership, there shall be had and kept just and true books of account wherein each of the said parties shall enter and set down, as well all the money by them or either of them received, paid, laid out, or expended in and about the said partnership business, as all goods, wares, commodities, and merchandise by them or either of them bought or sold by reason or on account of the said partnership business, and all other matters and things whatsoever to the said business and the management thereof in anywise belonging or appertaining, which said books shall be used in common between the said parties, so that either of them may have access thereto without any interruption or hindrance from the other. 10. It is hereby stipulated and agreed that, once in each year and on or about the 1st day of January or oftener if necessary, the said parties *266 shall make, yield, and render, each to the other, a true, just, and perfect inventory and account of all the profits and increase by them or either of them made and of all the losses by them or either of them sustained, as well as of all payments, receipts, disbursements, and all other things by them or either of them made, received, disbursed, acted, done, or suffered in the said partnership business, and, after the said inventory and account have been so made, shall and will clear, adjust, pay, and deliver, each to the other, at the time, their just shares of the profits so made as aforesaid, and 11. It is hereby stipulated and agreed that, at the end of the aforesaid period of the partnership or on the dissolution of the partnership prior to the end of the said period, the said parties shall and will make, each to the other, a true, just, and final account of all the matters and things relating to the said partnership business and shall truly adjust the same in all things, and all and every the stocks and goods as well as the gains and increase thereof which shall appear to be remaining, either in moneys, goods, wares, fixtures, debts, or otherwise, shall be equally divided between *267 them. 12. Neither of the said parties shall sign any bond, sign or endorse any note, accept, sign, or endorse any draft or bill of exchange, or assume any other liability, oral or written, either in his own name or in the name of the said partnership, for the accommodation of any other person or persons whomsoever, without the consent in writing of the other party to this agreement, and neither of the said parties shall lend any of the funds of the said partnership without the written consent of the other party. 13. It is hereby understood and agreed that the said partnership shall open a checking account in the County Trust Company of Tenafly, New Jersey, under the name of said partnership, and all checks in the said bank account shall be signed by both partners. 14. No purchase or other contract involving a liability of more than one thousand dollars and no importation from abroad shall be made and no transaction outside the usual course of the partnership business shall be undertaken by either of the said parties without the previous consent and approval of the other party. 15. On the dissolution of the said partnership, either party may make an offer in writing to the other *268 party with respect to the price at which the first party will buy the partnership interest of the other or will sell his own interest to the other; the other party shall thereupon, within thirty days, sinify [signify] his election in writing whether he will buy or sell at the said price, and, should he fail to signify his election within the said period of time, the party making the offer may, within thirty days, buy or sell, at his own election, in accord with his offer. 16. In the event of the violations of any of the foregoing stipulations and obligations by either of the parties to these presents, the other party may, at his option, dissolve the said partnership by giving the other party written notice of his intention so to do within five days after receiving information; after the expiration of one year of the existence of the said partnership, either party may, at his election, dissolve the said partnership by giving the other party thirty days' notice in writing of his intention so to do. 17. In the case of death of any one of the said parties prior to the dissolution of the said partnership, the said partnership shall cease; the partnership shall be carried on by the *269 surviving partner and within thirty days after the death of the deceased partner the surviving partner shall pay to the widow of the deceased partner the decedent's interest share in the said partnership in accordance to the book value place upon the partnership; and in the event that there is a dispute as to the fair value of the partnership, the question shall be submitted to arbitration in accordance with the laws of the State of New Jersey. 18. No partner shall without the consent of the other, release or compound any debt or obligation owed to the said partnership as a result of the said partnership business, except debts and obligations discharged in the ordinary course of the said partnership business. The partnership of T & G Plumbing & Heating Supplies was a separate entity from petitioner, Union Plumbing & Heating Inc. Opinion BLACK, Judge: We have but one issue in the instant case and that issue is: Did the Commissioner err in ignoring the partnership of T & G Plumbing & Heating Supplies and taxing all of its income to petitioner, Union Plumbing & Heating Inc.? The Commissioner, in his determination of the deficiencies, did not mention section 482 of the 1954 Code *270 or make any of the determinations necessary to apply that section. He simply determined that the partnership income constitutes additional income to the petitioner corporation, a conclusion which we think is not supported by the record. The Commissioner, in his brief, refers to section 482 [1] printed in the margin and relies upon it. In we stated the rule which should govern in such cases as these, as follows: a taxpayer is free to choose *271 the type of organization or form in which he will cast his business activities to achieve a desired business or tax result. * * * He is not required to adopt or continue with that form of organization which results in the maximum tax upon business income. . . Furthermore, if a taxpayer actually carries on business in the form chosen, the tax collector may not deprive him of the incidental tax benefits flowing therefrom, unless it first be found to be but a fiction or a sham. * * * It is, of course, clear from the above that if the facts show that the partnership of T & G was a "fiction or a sham" it should not be recognized for tax purposes and the Commissioner did not err in including its net income in the income of petitioner. We had considerable evidence on this issue at the trial, both that which was embodied in a stipulation which was filed and the testimony of witnesses who testified orally. We shall not enter into a lengthy discussion of this evidence. Suffice it to say that we have carefully considered it and we find no justification in holding that the partnership *272 was a fiction or a sham. We think petitioner has met its burden of proof to show that the partnership was organized and operated in the taxable years for a legitimate business purpose. It had its own capital which was furnished by the two partners, $7,000 each, and it carried on a business; it kept its own separate books and accounts. It seems to us that the Commissioner was without authority under section 482, as he argues in his brief, to take the income of the partnership and add it to the income of petitioner. Moreover, consideration of that section is not before us. . In , we said at p. 1243: This Court has heretofore held that section 45 does not authorize the addition of the net income of one corporation or business organization to that of another and was not enacted to consolidate two organizations for tax purposes by ignoring one completely. ; . Cf. . Section 45 of the 1939 Code to which we referred in the above *273 quotation from the Byrne case is in effect the same as section 482 of the 1954 Code. We, therefore, hold that the Commissioner erred in determining "that net income distributed as profit of the partnership, T & G Plumbing & Heating Supplies, constitutes additional taxable income to the taxpayer corporation in the amount of $12,275.07 for the year 1955, $12,098.71 for the year 1956 and $13,291.22 for the year 1957." Because there were some more or less minor adjustments in the deficiency notice which were not contested, Decision will be entered under Rule 50. Footnotes
1. SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩